No. 25335

## The People of the State of Colorado v. Ernest L. Lucero

(511 P.2d 468)

Decided June 11, 1973.

40

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Sara Duncan, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, Kenneth J. Russell, Deputy, Natalie S. Ellwood, Assistant, Dorian E. Welsh, Assistant, for defendant-appellant.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

Ernest L. Lucero, defendant herein, appeals from his conviction for assault with a deadly weapon and assault with intent to rob, both in violation of C.R.S. 1963, 40-2-34.

During the People's case the defendant moved to suppress certain evidence (a ski mask and a .22 caliber revolver) seized in a search of an automobile incident to defendant's arrest. This motion was denied by the trial court. On appeal defendant's sole contention is that the search of the automobile was not incident to a lawful arrest and the evidence obtained as a result of the search is inadmissible against him. We do not agree and affirm the judgment of the district court.

The facts relevant to the issue raised by defendant are uncontroverted. At about 6:00 p.m. on December 28, 1970, Jack's Corner Grocery was the target of an attempted robbery by a man armed with a pistol. The grocery's proprietor, Jack Newfield, immediately phoned police, and officers Bame and O'Connel were dispatched to the scene to

investigate. Besides Jack Newfield, the investigating officers questioned the store helper, Terry Rios, who described the assailant as a Caucasian male, five foot eleven inches in height, possibly 160-165 pounds, wearing a dark blue shirt, a brown coat, and a blue ski mask over his face. Other unidentified persons in and around the grocery were also interviewed and police obtained a general description of the getaway vehicle as a dark blue car, possibly a Ford Falcon. These descriptions of the suspect and getaway vehicle were immediately radioed to patrol cars in the vicinity by Officer Bame while Officer O'Connel continued the investigation.

Shortly after the descriptions were radioed, Officer Jones, who had received the bulletin while traveling in his patrol car in the general vicinity of the grocery, observed a blue Ford Falcon following behind him. Based upon the description of the getaway vehicle in the bulletin, Officer Jones decided to stop the Falcon and investigate its occupants. While Officer Jones was in the process of slowing his patrol car to make the stop the suspect vehicle was stopped by a second patrol car, presumably pursuant to the same bulletin. Officer Jones parked in front of the Falcon and got out of his patrol car to investigate. Approaching the Falcon, Officer Jones observed its occupants, and one of them matched the detailed description of the suspect that had been broadcast over Officer Jones' radio. Officer Jones reached underneath the front seat on the passenger side and pulled out a blue piece of material that turned out to be a blue ski mask. Inside the ski mask Officer Jones found a .22 caliber revolver. Officer Jones then placed the defendant under arrest.

## I.

Defendant challenges the reliability of the information describing the getaway vehicle, contending the source of this information was not identified. It is true there is no evidence in the record to indicate that the investigating officers obtained the description of the getaway vehicle from either of the two citizen informants who gave their names and addresses, that is, Jack Newfield or Terry Rios. *See People v. Glaubman*, 175 Colo. 41, 485 P.2d 711. Furthermore, we

cannot infer that either of these two named witnesses was the source of this information since the testimony of both clearly indicates they did not follow the assailant outside the grocery; instead, immediately after the assailant fled, they turned their attention to reporting the crime and remained inside to phone police. Since the description of the getaway vehicle was unquestionably obtained at the scene by investigating officers, the only reasonable inference remaining is that the source of the information was one or more of the *unidentified* persons on the scene who were also questioned. *See People v. Nanes,* 174 Colo. 294, 483 P.2d 958, 961; *Roberts v. People,* 9 Colo. 458, 474, 13 P. 630. We must, therefore, determine whether the description of the getaway vehicle supplied by *unidentified* persons at the crime scene provides a constitutionally sufficient basis for the officers to make an investigative stop of the Falcon.

## II.

In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, the United States Supreme Court recognized that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigation of possible criminal behavior even though there is no probable cause for arrest. The rationale of that case is that the Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a criminal to escape. As pointed out in *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response such as an investigatory stop. This philosophy has recently been extended to investigatory stops of automobiles in this state. *See People v. Kennard,* 175 Colo. 479, 488 P.2d 563. So it is here, where the officers came upon the described car in the very vicinity of the robbery. To have ignored the car would, in our view, have been a dereliction of duty rather than an adherence to the Fourth Amendment. *People v. Woods,* 176 Colo. 34, 485 P.2d 491 (1971).

■ Recently, this doctrine of allowing investigative stops based upon 'reasonable cause' was extended to include information supplied by informants' tips as well as the personal observations of police officers. *Adams v. Williams, supra; United States v. Mallory,* 460 F.2d 243 (10th Cir.); *United States v. Sanchez,* 450 F.2d 525 (10th Cir.); *White v. United States,* 448 F.2d 250 (8th Cir.).

To determine whether reasonable cause exists as a result of an informant's tip, we look to the language of *Adams v. Williams, supra,* at 92 S.Ct. 1924:

"* * * *Informants' tips,* like all other clues and evidence coming to a policeman *on the scene*, may vary greatly in their value and reliability. One simple rule will not cover every situation. Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized. But in *some situations* — for example, when the victim of a street crime seeks *immediate police aid and gives a description of his assailant,* or when a credible informant warns of a specific impending crime — the subtleties of the hearsay rule should not thwart an appropriate police response." (Emphasis added).

■ In this case the record clearly reveals that the person or persons who gave the investigating officers the description of the getaway vehicle were not covert, undercover informants likely to fabricate information in return for immunity or other compensation. *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). Instead, these informants were citizens present at the scene who were openly responding to police questioning in order to assist in solving a crime. While it may be true that admirable motives cannot alone supply probable cause, we consider a group of unidentified citizen informants who describe a getaway vehicle in response to an on the scene police investigation to possess sufficient reliability to give rise to reasonable cause to stop the described car for investigatory purposes.

### III.

■ It remains for this Court to determine if the existence

44

of reasonable cause to make an investigatory stop justified Officer Jones' seizure of the ski mask and hand gun. Unquestionably, Officer Jones' initial actions were directed to making an investigatory stop of the Falcon in order to question its occupants. In the process of this stop and investigation Officer Jones observed that one of the occupants matched the detailed description of the assailant which had been provided by a known victim of the assault, namely, Terry Rios. Moreover, Officer Jones' observations placed the suspect in the getaway vehicle. Having corroborated both descriptions by his own independent observations, Officer Jones *at that point* had probable cause to arrest the defendant and search the vehicle. *Chambers v. Maroney, supra.*

Since Officer Jones obtained probable cause to search the vehicle and seize the evidence in the process of making a lawful stop for threshold investigatory purposes, the defendant's motion to suppress this evidence was properly denied.

The judgment is affirmed.

MR. JUSTICE GROVES does not participate.